FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2024

SEAN F. MCAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DONALD L. DASHIELL and GLENDA A. DASHIELL, husband and wife; WESLEY LEWIS MCCART and PAMELA JOYCE MCCART, husband and wife; and STEVENS LYNN PARKER and ANTOINETTE LYNN PARKER, husband and wife, | No. 2:23-CV-00239-MKD |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DECLINING SUPPLEMENTAL JURISDICTION |
| v. | **ECF Nos. 18, 20** |
| STEVENS COUNTY, a municipal corporation and political subdivision of the State of Washington; and TIM RASMUSSEN, both in his official capacity as Stevens County Prosecutor and individually, | |
| Defendants. | |

On April 30, 2024, the Court conducted a hearing on Defendant

Rasmussen's Motion for Summary Judgment, ECF No. 18, and Defendant Stevens

County's Motion for Summary Judgment, ECF No. 20. Luke O'Bannan appeared

on behalf of Plaintiffs. Neal Peters appeared on behalf of Defendant Stevens

ORDER - 1

County.  Shane Brady and George Ahrend appeared on behalf of Defendant Tim

Rasmussen, who was present.  The Court has reviewed the briefing and heard from

counsel and is fully informed.  For the reasons explained below, the Court grants in

part and denies in part both motions and declines to exercise jurisdiction over

Plaintiffs' state-law claims.

## BACKGROUND

### A. Factual History

The following facts are undisputed.  Plaintiffs Donald Dashiell, Wesley

McCart, and Steven Parker ("Plaintiff Commissioners") were members of the

Stevens County Board of Commissioners between 2012 and 2020.  ECF No. 31 at

2 ¶¶ 1-3.  Defendant Tim Rasmussen was the Prosecuting Attorney for Defendant

Stevens County from 2006 to 2022.  ECF No. 19 at 2 ¶ 2.

In September 2018, Rasmussen began investigating Plaintiff

Commissioners' July 9, 2018, vote to pay approximately $30,000 from Stevens

County's homelessness fund to local residents J.B. and A.B (the "J&AB

Payment").  ECF No. 31 at 6-7 ¶¶ 18-19; ECF No. 19 at 2-3 ¶ 4-6; ECF No. 22 at 2

¶ 3.  Plaintiff Commissioners approved the J&AB Payment to reimburse J.B. and

A.B. for the expense of relocating their home, after it was rendered uninhabitable

by flooding and erosion of a nearby riverbank.  ECF No. 19 at 2-3 ¶¶ 4-5; ECF

No. 19-1 at 8; ECF No. 21-10 at 4.

On September 13, 2018, Rasmussen communicated his concerns about the J&AB Payment to Plaintiff Commissioners, stating he would work with them to determine how to resolve the matter. ECF No. 28 at 4-5 ¶ 11; ECF No. 29 at 5 ¶ 13; ECF No. 30 at 4-5 ¶ 12. On September 17, 2018, Rasmussen reported the J&AB payment to the Washington State Auditor's Office ("State Auditor") and requested further "examin[ation]" of the situation. ECF No. 27-1 at 13-14.

On September 24, 2018, Rasmussen notified Plaintiff Commissioners that the J&AB Payment was an unlawful gift of public funds and advised them to seek counsel. ECF No. 27-1 at 20; ECF No. 19 at 5 ¶ 13; ECF No. 21-10 at 3. That same day, Rasmussen reported to the Washington State Patrol his belief that the J&AB Payment was "an illegal transaction with a private party" and that the Stevens County Sheriff recommended this "be investigated by an outside agency." ECF No. 27-1 at 18; ECF No. 19 at 5 ¶ 14.

On October 4, 2018, Rasmussen requested that the State Auditor conduct an "accelerated investigation" of the J&AB Payment. ECF No. 27-1 at 16.

At some point thereafter, Rasmussen learned that Plaintiff Commissioners had approved two payments in 2014 and 2017 to the Pay-It-Forward Foundation, totaling approximately $90,000 of County homelessness funds (the "Pay-It-Forward Payments"). ECF No. 19 at 5-6 ¶ 15; ECF No. 19-1 at 8. The Pay-It-Forward Foundation had requested these funds to construct a temporary housing

ORDER - 3

and rehabilitation program for individuals with spinal cord injuries and similar conditions.  ECF No. 28 at 3-4 ¶ 8; ECF No. 29 at 3-4 ¶ 10; ECF No. 30 at 3-4 ¶ 9; ECF No. 19-1 at 8.  On October 29, 2018, Rasmussen requested that the State Auditor's investigation of the J&AB Payment be expanded to include the Pay-It-Forward Payments.  ECF No. 27-1.

On February 1, 2019, Rasmussen appointed George Ahrend as a Special Deputy Prosecutor to represent Stevens County "on the matter of the Stevens County Commissioners['] expenditures from the homelessness fund."  ECF No. 27-1 at 60.

On February 21, 2019, the State Auditor issued an Accountability Audit Report, which concluded that Stevens County "did not have an adequate application and approval process over the homeless housing and assistance program to ensure compliance with the County's homeless plan and state law." ECF No. 19-1 at 2-17.  In particular, the Report found that the Stevens County "Board of Commissioners believed that the direct assistance provided was consistent with statewide guidelines and its homeless housing plan [and therefore] did not seek legal counsel before approving payments."  *Id.* at 8.  The Report found that, as an "[e]ffect" of this situation, the J&AB Payment and Pay-It-Forward Payments were "made for activities not specified in the County's homeless housing

ORDER - 4

plan and [were] therefore considered an unallowable use of the restricted funds and
. . . gift[s] of public funds." *Id.*

On February 22, 2019, Rasmussen appointed Pam Loginsky as a Special
Deputy Prosecutor to represent Stevens County "on the matter of the Stevens
County Commissioners['] expenditures from the homelessness fund." ECF
No. 27-1 at 61. Rasmussen had previously consulted with Loginsky while
investigating the J&AB Payments. ECF No. 19 at 3 ¶ 7, 5 ¶ 12.

On March 14, 2019, Rasmussen requested that the Washington Attorney
General's Office appoint an assistant attorney general to pursue criminal charges
against Plaintiff Commissioners, as he believed it would be "inappropriate" to
pursue criminal charges himself while he was representing Stevens County "in
trying to recover the unlawfully authorized gifts" from Plaintiff Commissioners.
ECF No. 27-1 at 23-25.

**B. State Court Proceedings**

*1. Ex Parte Action*

On February 26, 2019, Plaintiff Commissioners filed an ex parte motion in
Stevens County Superior Court for appointment of counsel in relation to the J&AB
and Pay-It-Forward Payments (the "Ex Parte Action," case no. 19-2-00084-33).
ECF No. 19 at 8 ¶ 22; ECF No. 19-1 at 40-43.

On May 24, 2019, the state superior court denied Plaintiff Commissioners' request for appointed counsel.  ECF No. 19-1 at 40-43.

### 2.  *Bond Action and Declaratory Action*

On March 21, 2019, Rasmussen filed two actions in Stevens County Superior Court—one action sought to recoup the value of the J&AB and Pay-It-Forward Payments from Plaintiff Commissioners' official bonds (the "Bond Action," case no. 19-2-00122-33), and the other sought a declaratory judgment that Plaintiff Commissioners were not entitled to counsel at public expense for litigation on these issues (the "Declaratory Action," case no. 19-2-00121-33).  ECF No. 19 at 7 ¶ 18, 8 ¶ 23; ECF No. 19-1 at 19-31, 45-47.

On July 20, 2020, Plaintiff Commissioners tendered checks totaling $130,326.25 to the Stevens County Treasurer "in order to put an end" to the Bond Action.  ECF No. 27-1 at 45-48.

On August 20, 2020, the superior court granted summary judgment for Rasmussen in the Bond Action and found Plaintiff Commissioners liable for $130,326.25 in unconstitutional gifts of public funds.  ECF No. 19-1 at 33-35.

On August 24, 2020, Rasmussen advised County employees that the August 20 order in the Bond Action "ha[d] the legal effect of creating vacancies in the Stevens County Commissioner's offices" and "[a]s a consequence, this board

of County Commissioners no longer has legal authority." ECF No. 31 at 11-12 ¶ 41; ECF No. 27-1 at 27.

On September 25, 2020, the superior court entered judgment in the Bond Action for Rasmussen and Stevens County against Plaintiff Commissioners and their bond insurers for a principal amount of $130,326.25. ECF No. 19-1 at 89-92.

### 3. Quo Warranto Action

On August 24, 2020, Rasmussen filed a fourth action in Stevens County Superior Court, seeking a writ of quo warranto ousting Plaintiff Commissioners from office (the "Quo Warranto Action," case no. 20-2-00232-33). ECF No. 19-1 at 51-58.

On October 28, 2020, the superior court entered a judgment of ouster against Plaintiff Commissioners in the Quo Warranto action, concluding that their offices "became vacant on August 20, 2020." ECF No. 21-3 at 1. On January 12, 2021, the court also granted summary judgment for Rasmussen in the Quo Warranto Action and found Plaintiff Commissioners each liable for approximately $1,800 to $2,400. ECF No. 19-1 at 76-78.

### 4. State Appellate Proceedings

Plaintiff Commissioners filed an appeal of the judgment in the Bond Action on October 21, 2020. ECF No. 19-1 at 80-82. The Washington Court of Appeals reversed the trial court's summary judgment, finding that "regardless of whether

ORDER - 7

[the Commissioners'] votes were ill advised or even unconstitutional, their votes did not constitute actions taken by the [C]ommissioners in their personal capacities[,]" and could not "make them liable under the terms of their official bonds." *See Stevens Cnty. ex rel. Rasmussen v. Travelers Surety & Cas. Co. of Am.*, 507 P.3d 417, 420 (Wash. Ct. App. 2022). Plaintiff Commissioners did not appeal the superior court's decisions in the Ex Parte Action, Declaratory Action, or Quo Warranto Action. ECF No. 19 at 9 ¶¶ 24, 27.

**C. Procedural History of the Federal Case**

Plaintiffs' Amended Complaint contains six claims: (1) violation of Plaintiffs' Fourteenth Amendment Due Process rights pursuant to 42 U.S.C. § 1983; (2) violation of Plaintiffs' First Amendment rights pursuant to 42 U.S.C. § 1983; (3) civil malicious prosecution; (4) wrongful discharge in violation of public policy; (5) intentional interference with a business expectancy; and (6) unlawful wage rebate or withholding pursuant to RCW 49.52.050(1)-(2) and 49.52.070. ECF No. 7 at 13-18.

The Court conducted a scheduling conference on December 5, 2023. ECF No. 14. At the conference, Defendants requested a stay of discovery, as they anticipated filing motions to dismiss on the issues of subject matter jurisdiction, absolute prosecutorial immunity, and qualified immunity. *Id.*; *see also* ECF No. 13 at 3. The Court directed Defendants to file any such motions by

January 16, 2024, and granted a stay of discovery until the resolution of these

motions.  ECF No. 15 at 2.

Defendants timely filed the instant motions, albeit styled as motions for

summary judgment instead of motions to dismiss.  ECF Nos. 18, 20.  Plaintiffs

have not objected to the summary judgment form of Defendants' motions; both

parties have introduced materials outside the pleadings; and Plaintiffs have not

submitted an affidavit or declaration stating that, "for specified reasons, [they]

cannot present facts essential to justify [their] opposition" to summary judgment

under Fed. R. Civ. P. 56(d).  As such, the Court proceeds under the summary

judgment standard except where otherwise noted.

## LEGAL STANDARD

A party may move for summary judgment on part of a claim or defense.

Fed. R. Civ. P. 56(a).  The court must grant summary judgment "if the movant

shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  *Id.*; *see also Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986).  The court "must view the evidence in the light most

favorable to the nonmoving party and draw all reasonable inference in the

nonmoving party's favor."  *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir.

2018).  "Credibility determinations, the weighing of the evidence, and the drawing

of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

A movant who does not bear the burden of persuasion at trial can succeed on summary judgment either by producing evidence that negates an essential element of the nonmoving party's claim or defense, or by showing that the nonmoving party lacks sufficient evidence to prove an essential element. *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In response, the nonmovant "must do more than show that there is some 'metaphysical doubt' as to the material facts at issue" by offering "evidence from which a jury could reasonably render a verdict in the [nonmovant's] favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); citing *Anderson*, 477 U.S. at 252).

## DISCUSSION

Defendants move for summary judgment on all of Plaintiffs' claims on the following grounds: (1) lack of jurisdiction under the *Rooker-Feldman* doctrine; (2) absolute prosecutorial immunity from suit; (3) qualified immunity from Section 1983 liability; and (4) Washington common law qualified immunity from state law liability. ECF No. 18; ECF No. 20. Defendant Stevens County also moves for

1   summary judgment on Plaintiffs' *Monell* claim, contending that Plaintiffs have

2   pleaded insufficient facts to support *Monell* liability.  ECF No. 20 at 13-15.

3       **A. Jurisdiction Under *Rooker-Feldman***

4       Both Defendants contend that the Court lacks subject matter jurisdiction to

5   adjudicate this matter under the *Rooker-Feldman* doctrine, arguing that Plaintiffs

6   are seeking federal court review of the final judgments in the four state cases.  ECF

7   No. 18 at 16-18; ECF No. 20 at 15-18.  As this argument implicates the Court's

8   jurisdiction to consider Defendants' other arguments, it must be resolved first.[1]

9       "The *Rooker-Feldman* doctrine provides that [28 U.S.C.] § 1257, by vesting

10   jurisdiction over state-court appeals in the Supreme Court, necessarily 'precludes a

11   United States district court from exercising subject-matter jurisdiction . . .' if the

12   action asks the federal district court to 'overturn an injurious state-court

13

————————————

14   [1] "A dismissal under the *Rooker-Feldman* doctrine is a dismissal for lack of

15   subject-matter jurisdiction and thus, should be . . . without prejudice."  *Fleming v.*

16   *Gordon & Wong Law Grp., P.C.*, 723 F. Supp. 2d 1219, 1224 n.10 (N.D. Cal.

17   2010) (citing *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004);

18   *Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999)); *see*

19   *also Cooper v. Ramos*, 704 F.3d 772, 776-77 (9th Cir. 2012) (citing *Frigard v.*

20   *United States*, 862 F.2d 201, 204 (9th Cir. 1988)).

1  judgment.'"  *Brown v. Duringer Law Grp. PLC*, 86 F.4th 1251, 1253 (9th Cir.

2  2023) (quoting *Exxon Mobil Corp v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-

3  92 (2005)).  This doctrine "applies only in 'limited circumstances'" and only to

4  "'cases [1] brought by state-court losers [2] complaining of injuries caused by

5  state-court judgments [3] rendered before the district court proceedings

6  commenced and [4] inviting district court review and rejection of those

7  judgments.'"  *Id.* at 1253-54 (quoting *Exxon*, 544 U.S. at 284, 291).

8       As Plaintiffs prevailed on appeal in the Bond Action, they could only be

9  construed as "state-court losers" in the Ex Parte Action, the Declaratory Action,

10  and the Quo Warranto Action.  *See id.* at 1253-54.  At the hearing, Plaintiffs

11  insisted they are not seeking reversal of the state court judgments and only offer

12  the state court proceedings as evidence of Rasmussen's "motive" and "campaign"

13  to harm Plaintiff Commissioners.  ECF No. 40 at 37-40.  From the record,[2] the

_____

15  [2] The state superior court orders filed by the parties reveal little information about

16  the particular legal issues and arguments resolved in each order.  Based on the

17  current record, Plaintiffs' "injuries" from the state-court judgments amount to:

18  (1) the denial of counsel at public expense from the Ex Parte and Declaratory

19  Actions; and (2) the removal from office and monetary liability from the Quo

20  Warranto Action.

ORDER - 12

1   degree of overlap between Plaintiffs' claims in this federal case and the "injuries"

2   they sustained from the state court judgments is not entirely clear.  Because it

3   appears that nearly all claims in this case could be resolved in either party's favor

4   without necessarily disrupting the state court judgments, dismissal on *Rooker-*

5   *Feldman* grounds is not warranted.

6        The sole exception is Plaintiffs' wage rebate claim, which may require the

7   Court to reject the judgment in the Quo Warranto Action.  Plaintiffs fail to specify

8   the dates or amounts of the wages at issue in their wage rebate claim.  *See* ECF

9   No. 7 at 18.  The limited record implies that the state superior court ordered

10  Plaintiffs to disgorge wages in the Quo Warranto Action.  *See* ECF No. 19-1 at 77

11  (finding Plaintiff Commissioners each liable for approximately $1,400 to $2,400

12  and directing Stevens County to "promptly remit" any refund it receives "of health

13  insurance premiums or any other withholding included in the above amounts").  If

14  so, it is possible that Plaintiffs' wage rebate claim includes these disgorged wages

15  and would therefore invite the Court to reject the state-court judgment.

16       Where there is reason to doubt the existence of facts upon which subject

17  matter jurisdiction depends, "the district court may insist that the jurisdictional

18  facts be established or the case be dismissed, and for that purpose the court may

19  demand that the party alleging jurisdiction justify its allegations by a

20  preponderance of evidence."  *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012)

1   (quotation marks and citation omitted).  Because there is no other indication in the

2   record specifying what wages Plaintiffs are seeking in their wage rebate claim,

3   there is reason to doubt that the wage rebate claim concerns wages separate from

4   any wage disgorgement in the state-court judgments, although no party made

5   *Rooker-Feldman* arguments specific to the wage rebate claim.  *See* ECF No. 18 at

6   16-18; ECF No. 20 at 15-18; ECF No. 25 at 16-18; ECF No. 26 at 12-14.

7        Ultimately, the Court finds it unnecessary to require further development of

8   this issue, given that the Court declines supplemental jurisdiction over Plaintiffs'

9   state-law claims and dismisses them without prejudice for the reasons explained

10  below.

11       **B. Section 1983 Claims**

12       Plaintiffs bring two Section 1983 claims against both Defendants: the first

13  alleges a violation of Plaintiffs' Fourteenth Amendment Due Process rights (the

14  Due Process claim), and the second alleges a violation of Plaintiffs' First

15  Amendment Free Speech rights (the First Amendment claim).  ECF 7 at 13-16.

16       *1. Due Process Claim*

17       Plaintiffs did not respond to Defendants' arguments for summary judgment

18  on the Due Process claim.  At the hearing, Plaintiffs' counsel confirmed that

19  Plaintiffs are abandoning the Due Process claim, although they maintain any

20  factual allegations related to that claim that are relevant to other claims.  ECF

ORDER - 14

No. 40 at 26-27.  Accordingly, the Court grants summary judgment for Defendants on Plaintiffs' Due Process claim.

### 2. *Absolute Prosecutorial Immunity – Defendant Rasmussen*

Defendant Rasmussen seeks summary judgment on all claims based on absolute prosecutorial immunity.  ECF No. 18 at 8-11.

"Prosecutors performing their official prosecutorial functions are entitled to absolute immunity against constitutional torts." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012) (en banc).  Such immunity "is meant to 'protect the prosecutor from harassing litigation that would divert his time and attention from his official duties' and to 'enable him to exercise independent judgment when deciding which suits to bring and in conducting them in court.'" *Torres v. Goddard*, 793 F.3d 1046, 1051 (9th Cir. 2015) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 125 (1997)) (alterations omitted).  "Moreover, 'the judicial process is available as a check on prosecutorial actions,' and it reduces the need for private suits for damages to keep prosecutors in line." *Lacey*, 693 F.3d at 912 (quoting *Burns v. Reed*, 500 U.S. 478, 492 (1991); citing *Mitchell v. Forsyth*, 472 U.S. 511, 522-23 (1985)).

Absolute immunity attaches based on "the nature of the function performed, not the identity of the actor who performed it." *Kalina*, 522 U.S. at 127 (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).  "A prosecutor is absolutely

immune 'when performing the traditional functions of an advocate'" but not "when he is 'cast in the role of an administrator or investigative officer rather than that of advocate.'"  *Torres*, 793 F.3d at 1051 (quoting *Kalina*, 522 U.S. at 125, 131) (alteration omitted).  The defendant claiming absolute immunity has the burden of showing his or her entitlement to such immunity.  *Stapley v. Pestalozzi*, 733 F.3d 804, 811 (9th Cir. 2013) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

Defendant Rasmussen asserts that all his conduct, as alleged in the Amended Complaint and summarized in his Motion, was "performed pursuant to his official capacity and obligations" as County Prosecutor under state law, therefore he is entitled to absolute prosecutorial immunity.  ECF No. 18 at 10-11.  The Court must analyze absolute immunity based on the nature of each function Defendant Rasmussen performed.  *See Kalina*, 522 U.S. at 127; *Botello v. Gammick*, 413 F.3d 971, 978 (9th Cir. 2005) ("[A] prosecutor may not assert blanket absolute immunity by labeling all his actions as within a particular prosecutorial function.").  The relevant conduct, as identified by the parties, falls into two general categories: actions taken in relation to the state court cases, and actions taken outside the courtroom.  *See* ECF No. 18 at 10 (listing relevant conduct); ECF No. 25 at 3-9 (addressing absolute immunity for in-court conduct and out-of-court conduct in separate sections).

a.  In-Court Conduct

Defendant Rasmussen has adequately shown that his conduct in the four

state court cases fell within the traditional advocacy functions of a county

prosecutor.  *See Torres*, 793 F.3d at 1051.  He cites the statutory duties of a county

prosecutor set forth in RCW 36.27.020(3) and (4).  Subsection (3) imposes a duty

on county prosecutors to "[a]ppear for and represent the state [and] county . . . in

all criminal and civil proceedings in which the state or the county . . . may be a

party."  Subsection (4) imposes a duty to "[p]rosecute all criminal and civil actions

in which the state or the county may be a party, defend all suits brought against the

state or the county, and prosecute actions upon forfeited recognizances and bonds

and actions for the recovery of debts, fines, penalties, and forfeitures accruing to

the state or the county."

On this record, Defendant Rasmussen's involvement in the four state-court

cases plainly fell within his statutory duties as an advocate for the state's or

Stevens County's interests in a civil proceeding under Subsection (3) and, with

respect to the Bond Action, a prosecution upon Plaintiff Commissioners' official

bonds under Subsection (4).  Defendant Rasmussen likens the Bond Action to the

civil tax enforcement suits in *Flood v. Harrington*, 532 F.2d 1248, 1249-50 (9th

Cir. 1976) and *Fry v. Melaragno*, 939 F.2d 832, 834 (9th Cir. 1991), in which the

Ninth Circuit upheld absolute prosecutorial immunity.  ECF No. 32 at 2-3.  Finally,

the judicial process was available as a check on Defendant Rasmussen's conduct throughout these cases, reducing the need for a private suit for damages.  *See Lacey*, 693 F.3d at 912.

Plaintiffs do not respond to Defendant Rasmussen's claim of absolute immunity in relation to the Ex Parte Action, Declaratory Action, or Quo Warranto Action.  Pursuant to LCivR 56(e), the Court considers Plaintiffs to have conceded that Defendant Rasmussen is entitled to absolute immunity for conduct relating to these three matters.

Plaintiffs challenge Defendant Rasmussen's absolute immunity with respect to the Bond Action: they argue that, under *Stapley*, Defendant Rasmussen is not entitled to absolute prosecutorial immunity for bringing the Bond Action because it was a civil prosecution that could have been brought by a private citizen.  ECF No. 25 at 3-7.

In *Stapley*, 733 F.3d at 805-06, 811-12, two county prosecutors claimed absolute immunity from liability for filing a civil RICO suit against a political opponent.  The Ninth Circuit denied absolute immunity on two grounds.  *Id.* at 811.  First, because "the federal RICO statute does not provide any special authorization for county attorneys to file civil RICO suits," the prosecutor-defendants had "no status as plaintiffs different from private citizens," compared to the special authorization provided for the United States Attorney General to bring

such a suit.  *Id.* (comparing 18 U.S.C. § 1964(b) to 18 U.S.C. § 1964(c)).  Second, the court concluded that "the civil RICO suit was not 'analogous' to a criminal prosecution" and instead was "essentially a harassing public-relations ploy" in a "long-running 'political war.'"  *Id.* at 812.  The court noted that the prosecutors had filed the suit, announced it to the media, voluntarily dismissed the suit "before the court had any opportunity to assess its validity," and then held a press conference to claim (falsely) that the Department of Justice was taking over the RICO investigation.  *Id.*  "Through these actions, [the prosecutors] deliberately 'side-stepped the judicial process,' like the prosecutor in *Lacey* who avoided judicial scrutiny and thereby lost the protections of absolute immunity."  *Id.* (quoting *Lacey*, 693 F.3d at 914).

*Stapley* is distinguishable from the current circumstances on both points.  Although a private citizen may bring an action against an official bond, they must obtain leave of court by providing "a certified copy of the bond and an affidavit of the plaintiff, or some other person in his or her behalf, showing the delinquency" underlying the claim before filing the action.  RCW 42.08.030.  In contrast, special authorization is provided by RCW 42.08.030 when the plaintiff is the state, or the municipal or public corporation named in the bond.  *See Stapley*, 733 F.3d at 811.  A county, as the municipal corporation named in a county commissioner's bond, would not need to seek leave of court to file an action against that bond.  *See id.*;

1    *Stevens Cnty. ex rel. Rasmussen*, 507 P.3d at 419 (noting that under RCW

2    36.32.060, a county commissioner's official bond must be made "payable to the

3    county").  In other words, the statute provided special authorization for Defendant

4    Rasmussen to file the Bond Action on behalf of Stevens County, akin to the special

5    authorization under Section 1964(b) for the Attorney General to file a civil RICO

6    suit.  *See Stapley*, 733 F.3d at 811.

7            Next, Plaintiffs have not offered evidence from which a jury could

8    reasonably conclude that Defendant Rasmussen acted as "part of an ongoing

9    'political war'" on par with *Stapley*, as Plaintiffs claim, *see* ECF No. 25 at 6, or

10   attempted to side-step the judicial process or avoid judicial scrutiny.  *See In re*

11   *Oracle Corp. Sec. Litig.*, 627 F.3d at 387; *Stapley*, 733 F.3d at 812.  On the

12   contrary, Defendant Rasmussen invited judicial scrutiny by litigating the four state

13   court cases to final determination, three of which he filed of his own accord.

14           In short, Defendant Rasmussen has adequately shown that he is entitled to

15   absolute prosecutorial immunity from liability stemming from his in-court conduct

16   in the four state court cases, and Plaintiffs have failed to raise a genuine dispute of

17   material fact undermining this showing.  Defendant Rasmussen may not be held

18   liable for alleged damages resulting from his in-court conduct.

19

20

ORDER - 20

1

b.  Out-of-Court Conduct

2

In contrast, Defendant Rasmussen has not adequately shown that absolute

3

immunity extends to his out-of-court conduct, which Plaintiffs identify as follows:

4

(1) Defendant Rasmussen's communications with the Stevens County Sheriff, the

5

Washington State Patrol, the Washington Attorney General's Office, and the State

6

Auditor requesting further investigation; and (2) Defendant Rasmussen's August

7

24, 2020, letter to county employees.  *See* ECF No. 25 at 8-9.  He does not explain

8

how this out-of-court conduct falls within the traditional advocacy function of a

9

prosecutor and not within an investigative or administrative function.  *See Torres*,

10

793 F.3d at 1051.  Nor does he identify a statute or other legal authority that

11

assigns these duties to the county prosecutor.

12

The Court concludes that Defendant Rasmussen has not demonstrated that

13

he is entitled to absolute immunity for alleged damages resulting from his out-of-

14

court conduct.  The question therefore becomes whether Defendant Rasmussen is

15

entitled to qualified immunity for this conduct.

16

*3.  Qualified Immunity – Defendant Rasmussen*

17

Defendant Rasmussen seeks summary judgment on Plaintiffs' First

18

Amendment claim based on qualified immunity, arguing that Plaintiffs have

19

alleged insufficient facts to support a First Amendment violation claim and that no

20

clearly established right was violated.  ECF No. 18 at 15-16.

1    "The doctrine of qualified immunity protects government officials 'from

2    liability for civil damages insofar as their conduct does not violate clearly

3    established statutory or constitutional rights of which a reasonable person would

4    have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v.*

5    *Fitzgerald*, 457 U.S. 800, 818 (1982)).  "[A]n officer may be denied qualified

6    immunity at summary judgment in a Section 1983 case 'only if (1) the facts

7    alleged, taken in the light most favorable to the party asserting injury, show that

8    the officer's conduct violated a constitutional right, and (2) the right at issue was

9    clearly established at the time of the incident such that a reasonable officer would

10   have understood his conduct to be unlawful in that situation.'"  *Isayeva v.*

11   *Sacramento Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017) (quoting *Hughes v.*

12   *Kisela*, 862 F.3d 775, 783 (9th Cir. 2016)) (alteration omitted); *see also Ellins v.*

13   *City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013).  Courts "may consider

14   either prong first [and] need not decide the first prong if the second is dispositive."

15   *Martinez v. High*, 91 F.4th 1022, 1028 (9th Cir. 2024) (citing *Pearson*, 555 U.S. at

16   236).

17         The Court addresses the second prong first, as it is dispositive here.  *See id.*

18   Plaintiffs contend that under *Blair v. Bethel School District*, 608 F.3d 540 (9th Cir.

19   2010), "it was a clear violation of Plaintiffs' constitutional rights for

20

1   Mr. Rasmussen to improperly remove Plaintiffs from office" in retaliation for their

2   speech as County Commissioners.  ECF No. 25 at 11-12.

3          In *Blair*, 608 F.3d at 542, the plaintiff was one of five elected school board

4   members.  The board elected the plaintiff as vice president.  *Id.*  The plaintiff had

5   long been an outspoken critic of the district's superintendent.  *Id.*  After the board

6   voted to renew the superintendent's contract over the plaintiff's opposition, the

7   plaintiff told a reporter that he did not trust the superintendent.  *Id.*  Shortly after,

8   the board voted to remove him from his vice president position.  *Id.* at 543.  He

9   brought a Section 1983 claim for violation of his First Amendment rights.  *Id.*  The

10  Ninth Circuit found that the plaintiff had failed to show a sufficient "adverse

11  action," where he was removed "by a procedurally legitimate vote . . . by the very

12  people who elected him to the position in the first place" and remained a member

13  of the school board thereafter.  *Id.* at 543-44.  It is unclear how the *Blair* opinion

14  itself would provide state officials with notice that certain conduct violated the

15  First Amendment, where the court found that no First Amendment violation had

16  occurred.

17         Plaintiffs quote a section from *Blair* discussing *Bond v. Floyd*, 385 U.S. 116

18  (1966).  ECF No. 25 at 12.  In *Bond*, 385 U.S. at 188, the plaintiff was a newly

19  elected state representative.  An organization, for which the plaintiff served as

20  communications director, issued a statement criticizing federal policies in Vietnam.

*Id.* at 118-21.  The plaintiff later endorsed the statement to a reporter.  *Id.* at 121-22.  When the plaintiff tried to take his seat in the state House of Representatives, other members filed petitions alleging that he supported foreign enemies, disrespected his office, and held views inconsistent with the oath of office he would have to take to be seated.  *Id.* at 123.  The House ultimately refused to seat him.  *Id.* at 123-26.  The Supreme Court concluded that the plaintiff met all eligibility requirements imposed by the state constitution and was willing to take the oath of office.  *Id.* at 129-30.  The Court rejected the state's argument "that there should be no judicial review of the legislature's power to judge whether" the plaintiff was competent to take the oath.  *Id.* at 131.  The Court found that the plaintiff had not committed any incitement to violate draft laws and had engaged in protected speech.  *Id.* at 134.  Therefore, the state legislature violated the First Amendment by disqualifying the plaintiff in retaliation for his protected speech. *Id.*

Neither *Blair* nor *Bond* provides circumstances that are similar enough to this case to have put a reasonable official in Defendant Rasmussen's position on notice that their conduct was unconstitutional.  As one example, neither precedent involved a defendant who invited, rather than avoided, external review and oversight in the way that Defendant Rasmussen invited the state courts and other county and state agencies to independently consider his allegations against Plaintiff

Commissioners. Contrast this with *Bond*, in which the state opposed any "judicial review of the legislature's power to judge whether a prospective member" like the plaintiff was competent to take the oath of office. *See Bond*, 385 U.S. at 131.

As a second example, neither precedent involved a defendant who had a specific duty to prosecute official misconduct, in the way that RCW 36.27.020(4) conferred a duty upon Defendant Rasmussen to prosecute actions against official bonds on behalf of Stevens County. Rather, *Blair* and *Bond* involved retaliatory decisions taken by legislative officials, using legislative powers, against a fellow legislator. *See Blair*, 608 F.3d at 542; *Bond*, 385 U.S. at 123.

Finally, in neither case were the defendant's actions simultaneously justified by the plaintiff's violation of the law.[3] Here, various other authorities besides Defendant Rasmussen concluded that the J&AB Payment and Pay-It-Forward

---

[3] Although the plaintiff in *Bond* was accused of treason and incitement, the state argued that the plaintiff was excluded based on "loyalty," while "declin[ing] to argue that [his] statements would violate any law if made by a private citizen[.]" *See Bond*, 385 U.S. at 123, 132, 135. The Supreme Court also noted that, under existing precedent, it was clear the plaintiff "could not have been convicted for [making] these statements" under the First Amendment. *Id.* at 134 (citing example cases).

Payments were unlawful.  The State Auditor independently concluded that these

Payments were "unallowable gift[s] of public funds" under state law and Stevens

County's homelessness plan.  ECF No. 19-1 at 7-8, 14.  The state superior court

found that these Payments were unconstitutional gifts of public funds.  ECF

No. 19-1 at 35.  The Court of Appeals reversed on the issue of Plaintiff

Commissioners' individual bond liability but, notably, did not hold that the

payments were in fact lawful.  *See Stevens Cnty. ex rel. Rasmussen*, 507 P.3d at

418, 420 ("suspected . . . improper gifting"; "alleged unconstitutional gifting";

"regardless of whether their votes were ill advised or even unconstitutional";"[i]f

members of a legislative body vote on a measure that turns out to be illegal").

Even Plaintiffs are not claiming that the J&AB Payment or Pay-It-Forward

Payments were lawful.  *See, e.g.,* ECF No. 7 at 16 ¶ 67 ("the alleged improper

homelessness expenditures"); ECF No. 25 at 3 ("the allegedly unlawfully gifted

funds").

        For these reasons, *Blair* and *Bond* do not provide clearly established law that

would have put a reasonable official on notice that requesting further investigation

from outside agencies, or reporting a recent judicial ruling to county employees,

would violate Plaintiffs' First Amendment rights.  The Court grants summary

judgment for Defendant Rasmussen on Plaintiffs' First Amendment claim based on

the above findings of absolute prosecutorial and qualified immunity.

1          *4. Monell Liability – Defendant Stevens County*

2          Defendant Stevens County seeks summary judgment on Plaintiffs' *Monell*

3   claim, contending that Plaintiffs "fail[ed] to *assert* their federal claims against

4   Stevens County under any of the three allowable *Monell* theories" of "commission,

5   omission, or ratification."  ECF No. 20 at 14 (emphasis added).  This amounts to

6   an argument that Plaintiffs have failed to state a claim upon which relief can be

7   granted—an argument ordinarily brought under Fed. R. Civ. P. 12(b)(6) or 12(c)

8   rather than through a motion for summary judgment.

9          Many courts have concluded that a motion for summary judgment may be

10  treated as a Rule 12(b)(6) or 12(c) motion where the defendant challenges the

11  sufficiency of the complaint's allegations, provided the court does not consider

12  extrinsic evidence in assessing that challenge.  *See, e.g., Fields v. Wise Media,*

13  *LLC*, No. C12-5160, 2013 WL 3812001, at *4 (N.D. Cal. July 19, 2013) (applying

14  the Rule 56(d) summary judgment standard to some of the defendant's summary

15  judgment arguments, but applying the Rule 12(b)(6) standard to the defendant's

16  argument that the plaintiff failed to state a legally cognizable claim for relief)

17  (citing *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir.

18  1968); *Pascual v. Aurora Loan Servs., LLC*, No. 10-759, 2012 WL 2355531, at *2

19  (D. Haw. June 19, 2012)); *Myers v. Moore*, 326 F.R.D. 50, 58-59 (S.D.N.Y. 2018);

20  *Cabrita Point Dev., Inc. v. Evans*, No. 2006-103, 2008 WL 5455405, at *6 (D.V.I.

Dec. 31, 2008); *Borenstein McConnell & Calpin, P.C. v. Bank of Am. Corp.*, No. 13-3039, 2014 WL 69951, at *4 (D.N.J. Jan. 8, 2014); *cf. Pinson v. U.S. Dep't of Just.*, 69 F. Supp. 3d 108, 111-12 (D.D.C. 2014).

Although Plaintiffs did not object to applying the Rule 56 standard to their *Monell* claim, *see* ECF No. 26 at 2-3, 11-12, the Court finds it appropriate to apply the Rule 12(b)(6) standard given the early procedural standpoint of this case. *See* ECF No. 15 at 2 (staying discovery). The Court confines its Rule 12(b)(6) analysis to the allegations in the Amended Complaint, without considering extrinsic evidence. *See, e.g., Fields*, 2013 WL 3812001, at *4.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint, but legal conclusions are not entitled to the same "assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

a.  Sufficiency of the *Monell* Claim

A municipality may only be held liable under Section 1983 for constitutional violations resulting from the municipality's official policy or custom.  *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978)); *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011).  A plaintiff may demonstrate such a policy or custom by showing that: the municipality "act[ed] pursuant to an expressly adopted official policy"; the municipality had "a longstanding practice or custom"; or that "an official with final policy-making authority" committed the tort or "ratified a subordinate's unconstitutional . . . action and the basis for it."  *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (quotations omitted).  However, "a municipality cannot be held liable under [Section] 1983 on a *respondeat superior* theory."  *Benavidez*, 993 F.3d at 1153 (quoting *Monell*, 436 U.S. at 691) (quotation marks omitted).  At the Rule 12(b)(6) stage, dismissal is appropriate where the complaint lacks factual allegations that the municipality's custom or practice resulted in, and "was the 'moving force' behind," the plaintiff's constitutional deprivation.  *Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011).

Nowhere in the Amended Complaint do Plaintiffs allege that Defendant Stevens County had any relevant policy or custom, let alone a policy or custom

ORDER - 29

that was the "moving force" behind their alleged constitutional deprivation.  *See id.*

On the contrary, the factual allegations in the Amended Complaint tend to portray

Defendant Stevens County either as Defendant Rasmussen's employer or as

another individual officer acting alongside Defendant Rasmussen.  For example,

the Amended Complaint describes Rasmussen as "the prosecuting attorney

*employed by and empowered by, and acting under color of law and jointly with*,

Defendant Stevens County."  ECF No. 7 at 3 ¶ 7 (emphasis added).  The Amended

Complaint frequently refers to "Defendants" acting collectively.[4]  These references

continue in the paragraphs pleading the Section 1983 claims.  *See, e.g., id.* at 13 ¶¶

59-60 ("Defendants deprived Plaintiffs of their property and liberty interests . . .

Defendants wrongly made public accusations against the Commissioners . . ."), 16

¶¶ 68-69 ("As a direct and proximate cause of Defendants' retaliatory animus,

Plaintiffs' speech, political activity, and expressive conduct were chilled, impaired,

and suppressed . . . The conduct by Defendants is of a nature and extent that

---

[4] *See, e.g.,* ECF No. 7 at 5 ¶ 16 ("Defendants accused the Commissioners . . ."), 11

¶ 51 ("Defendants had no interest in allowing review of the trial court's decision

and instead proceeded with entry of judgment and the Commissioners' removal

from office."), 16 ¶ 70 ("Defendants instituted and continued malicious legal

actions against Plaintiffs . . .").

ORDER - 30

warrants punitive damages.").  This does not suffice to state a plausible claim for *Monell* liability.

The Court grants Stevens County's construed motion to dismiss the *Monell* claim.

b.  Amendment

Plaintiffs have not requested leave to amend, perhaps on the understanding that the Court would apply the summary judgment standard to this analysis. However, if a plaintiff raises an issue in response to a motion for summary judgment that was not contained in the complaint, the district court should construe the issues as a request to amend the complaint under Fed. R. Civ. P. 15. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) (citing *Jackson v. Hayakawa*, 605 F.2d 1121, 1129 (9th Cir. 1979); *Apache Survival Coalition v. United States*, 21 F.3d 895, 910 (9th Cir. 1994)); *but see La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) (citation omitted) (refusing the plaintiff's request to "effectively amend" the complaint with a new argument raised in response to a motion for summary judgment).  Plaintiffs argue for the first time, in their opposition to Defendant Stevens County's motion for summary judgment, that they are claiming Defendant Rasmussen had final policy-making authority on behalf of Defendant Stevens County with regard to the conduct that caused their

1    constitutional injury.  ECF No. 26 at 11-12.  The Court therefore construes this as a

2    request for leave to amend.  *See, e.g., Desertrain*, 754 F.3d at 1154.

3           "Five factors are taken into account to assess the propriety of a motion for

4    leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of

5    amendment, and whether the plaintiff has previously amended the complaint."

6    *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (citation omitted).

7    "Futility alone can justify the denial of a motion to amend."  *Id.* (citation omitted);

8    *see also Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989)

9    ("Leave to amend need not be given if a complaint, as amended, is subject to

10   dismissal.") (citations omitted).

11          Here, the requested amendment—which would be Plaintiffs' second time

12   amending the Complaint—would still fail to state a plausible *Monell* claim for

13   several reasons.  This indicates that amendment would be futile and that leave to

14   amend is appropriately denied.  *See Johnson*, 356 F.3d at 1077; *Moore*, 885 F.2d at

15   538.

16          First, where the individual officers have been "exonerated of constitutional

17   wrongdoing" on the basis of immunity, the *Monell* claim may only survive if it is

18   "not premised on a theory of liability that first requires a finding of liability on the

19   part of the individual officers[.]"  *Richards v. City of San Bernardino*, 39 F.4th

20   562, 574 (9th Cir. 2022); *see also Barrett v. Orange Cnty. Human Rights Comm'n*,

1    194 F.3d 341, 350 (2d Cir. 1999) (holding that "*Monell* municipal liability for

2    constitutional injuries may be found to exist even in the absence of individual

3    liability, at least so long as the injuries complained of are not solely attributable to

4    the actions of named individual defendants") (citation omitted).  Here, the

5    proposed amendment would allege a single theory of *Monell* liability for injuries

6    Plaintiffs solely attribute to Defendant Rasmussen's actions.  ECF No. 26 at 11-12.

7    In other words, the amended *Monell* claim would depend on a finding of individual

8    liability on Defendant Rasmussen's part.  Because Defendant Rasmussen is

9    entitled to absolute prosecutorial and qualified immunity from liability from

10   Plaintiffs' Section 1983 claims, the *Monell* claim would not survive even after the

11   proposed amendment.  *See Richards*, 39 F.4th at 574; *Barrett*, 194 F.3d at 350.

12         Second, for a *Monell* claim based on a final-policymaker theory of liability,

13   the tortfeasor must have had final policymaking authority over the "particular area"

14   or "particular issue" underlying the claim.  *McMillian v. Monroe Cnty.*, 520 U.S.

15   781, 785 (1997) (citation omitted); *see also Lytle v. Carl*, 382 F.3d 978, 982-83

16   (9th Cir. 2004).  Final policymaking authority must be "granted directly by a

17   legislative action or . . . delegated by an official who possesses such authority"

18   under state law—the fact that the official "has discretion in the exercise of

19   particular functions does not, without more, give rise to municipal liability based

20   on an exercise of that discretion."  *Pembaur v. City of Cincinnati*, 475 U.S. 469,

481-83 (1986) (citation omitted).  Plaintiffs have provided no Washington

authority[5] indicating that Defendant Rasmussen had final policymaking authority

on behalf of Defendant Stevens County over any relevant area or issue.  *See*

*McMillian*, 520 U.S. at 785; *Lytle*, 382 F.3d at 983.  At best, Plaintiffs offer the

uncited assertion that "Rasmussen has continuously argued he could pursue the

litigation without approval from the County (i.e.[, Plaintiff C]ommissioners) and

did not need authorization as his role as prosecutor gave him final decision-making

authority with respect to litigation."[6]  ECF No. 26 at 12.  But final policymaking

---

[5] Plaintiffs cite *Botello*, 413 F.3d at 978-79.  ECF No. 26 at 11-16.  But the *Botello*

court concluded that principal county prosecutors were final policymakers for the

county under *Nevada* law with respect to criminal prosecutions.  *Botello*, 413 F.3d

at 979 (citing *Webb v. Sloan*, 330 F.3d 1158, 1165 (9th Cir. 2003)).  This does not

address whether, under *Washington* law, a principal county prosecutor is a final

policymaker for their county with respect to criminal prosecutions, noncriminal

litigation, or other, out-of-court conduct.

[6] Plaintiffs have not addressed whether Defendant Rasmussen had (or lacked) final

policy-making authority over the *non*-litigation conduct alleged in their *Monell*

claim.  *See* ECF No. 25 at 7-9 (listing instances of Rasmussen's "actions outside

the judicial context"); ECF No. 7 at 15-16 ¶ 67.

ORDER - 34

authority must be conferred by the state legislature.  *See Pembaur*, 475 U.S. at 482.

A municipality is not liable under *Monell* simply because the tortfeasor official had

some discretion in the discharge of his official duties.  *See Pembaur*, 475 U.S. at

481-82.  It would also belie reason to hold a municipality liable solely because a

tortfeasor claimed to have final policymaking authority for the municipality.

Moreover, Plaintiffs have otherwise maintained that Defendant Rasmussen

did not have any special authority as a county officer.  In response to Defendant

Rasmussen's summary judgment motion, Plaintiffs argued that he was "on the

same footing as" a private plaintiff in bringing the Bond Action.  ECF No. 25 at 6-

7.  Plaintiffs also disputed Defendant Rasmussen's assertion that he litigated the

four state court cases "pursuant to his official duties."  ECF No. 31 at 2 (disputing

ECF No. 23 at 2-4 ¶¶ 5, 7, 10-11, 14).

Finally, there is another significant deficiency in Plaintiffs' First

Amendment claim that is unaddressed by the construed amendment.  "To state a

First Amendment retaliation claim, [the plaintiff] must plausibly allege that (1) she

engaged in a constitutionally protected activity, (2) [the defendant's] actions would

chill a person of ordinary firmness from continuing to engage in the protected

activity, and (3) the protected activity was a substantial or motivating factor in [the

defendant's] conduct."  *Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1019 (9th

Cir. 2020).  The Amended Complaint does not specify what constitutionally

protected activities were at issue, simply alleging that Defendants' retaliation chilled their "speech, political activity, and expressive conduct."  ECF No. 7 at 15-16.  These generalized terms could include activities that are not constitutionally protected.[7]  At the motion hearing, Plaintiffs' counsel was unable to define the allegedly protected activity in more specific terms when asked by the Court,[8] despite that Plaintiffs' First Amendment claim had been pending for more than eight months at that point.  If Plaintiffs still cannot specify what constitutionally protected activity they engaged in, months after they filed the initial Complaint and

_____

[7] For example, Plaintiffs could be claiming that the J&AB and Boharski Payments were constitutionally protected political activity, based on their general factual allegations in the section before the Section 1983 claim.  But it would be novel to argue that the First Amendment protects such conduct, when no one, not even Plaintiffs themselves, contends that these Payments were lawful.

[8] Plaintiffs' counsel provided the following answer:

> So there's speech in the communications between – the back and forth between the board of commissioners and the – and Prosecutor Rasmussen that occurred through – in various meetings where Prosecutor Rasmussen was questioned and denied his – his requests.  And then also the speech includes their acts as commissioners, which is conduct that constitutes speech under the First Amendment.

ECF No. 40 at 28.

ORDER - 36

roughly four years after the alleged retaliation occurred, amendment is plainly

futile.

The Court accordingly denies Plaintiffs' construed request to amend the

Amended Complaint on the basis that the proposed amendment would be futile and

dismisses Plaintiffs' First Amendment claim against Stevens County with

prejudice.

**C. Supplemental Jurisdiction**

Plaintiffs invoked federal question jurisdiction under 28 U.S.C. § 1331

based on their federal Section 1983 claims, with supplemental jurisdiction under

28 U.S.C. § 1367 for their state-law claims.  ECF No. 7 at 4.  Now, only the state-

law claims remain.

A district court "may decline to exercise supplemental jurisdiction over a

claim" where "the claim raises a novel or complex issue of State law" or where it

"has dismissed all claims over which it has original jurisdiction[.]"  28 U.S.C.

§ 1367(c)(1), (3).

At the hearing, the Court inquired about counsel's positions on

supplemental jurisdiction if the Court were to grant summary judgment on the

federal claims.  *See Ho v. Russi*, 45 F.4th 1083, 1087 (9th Cir. 2022).  Defendants'

counsel replied that the Court should grant summary judgment on Plaintiffs' state

claims or maintain supplemental jurisdiction over the state claims, rather than

1    remand the case to state court.  ECF No. 40 at 12-13, 19.  Plaintiffs' counsel stated

2    that remand would be appropriate if there was no remaining federal claim.  *Id.* at

3    57.

4          There are no remaining claims over which the Court has original

5    jurisdiction.  *See* 28 U.S.C. § 1367(c)(3).  Moreover, the Court notes that

6    Plaintiffs' remaining claims present novel or complex issues of State law.  *See* 28

7    U.S.C. § 1367(c)(1).  For example, it is not readily apparent whether Washington

8    recognizes the public policy underlying Plaintiffs' claim for wrongful discharge.

9    *See* ECF No. 7 at 17.  Similarly, the parties' cited cases neither confirm nor deny

10   whether Washington's doctrine of qualified immunity extends to an official like

11   Rasmussen.  *See* ECF No. 18 at 16-17; ECF No. 20 at 11-13; ECF No. 25 at 13-16;

12   ECF No. 32 at 7-9; ECF No. 34 at 7-8.  For these reasons, the Court finds it

13   appropriate to decline supplemental jurisdiction here.  The Court denies summary

14   judgment for Defendants on the state-law claims and dismisses those claims

15   without prejudice.

16                                    **CONCLUSION**

17         The Court (1) grants summary judgment for both Defendants on Plaintiffs'

18   abandoned Due Process claim; (2) grants summary judgment for Defendant

19   Rasmussen on Plaintiffs' First Amendment claim; (3) dismisses Plaintiffs' First

20   Amendment claim against Defendant Stevens County with prejudice; and

ORDER - 38

(4) declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims, thereby denying summary judgment on these claims and dismissing them without prejudice.

Accordingly, **IT IS HEREBY ORDERED:**

1.  Defendant Rasmussen's Motion for Summary Judgment**, ECF No. 18,** and Defendant Stevens County's Motion for Summary Judgment, **ECF No. 20**, are **GRANTED in part and DENIED in part** in the manner explained above.

**IT IS SO ORDERED.**  The District Court Executive is directed to (1) enter this Order, (2) provide copies to the parties; (3) **enter judgment for both Defendants on Plaintiffs' Section 1983 claims**; (4) **enter judgment of dismissal without prejudice for both Defendants on Plaintiffs' state-law claims**; and (5) **CLOSE** the file.

DATED September 30, 2024.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 39